# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STATE FARM FIRE AND CASUALTY COMPANY**, et al. | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6656** |
| **DIVA LIMOUSINE, LTD., et al.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

This litigation arises out of Richard Preston Butler's and State Farm Fire and Casualty Company's (collectively "Plaintiffs") assertion of negligence and breach of contract claims following the disappearance of Butler's jewelry from a hired limousine. Before the Court is Defendant Diva Limousine, LTD.'s ("Diva") "Motion to Dismiss for Lack of Personal Jurisdiction."[1] In the pending motion, Diva asserts that it lacks the minimum contacts with the state of Louisiana required for this Court to exercise personal jurisdiction.[2] Having considered the motion, the memorandum in support, the lack of opposition, the record, and the applicable law, the Court will grant Diva's Motion.

## I. Background

### A. Factual Background

Plaintiff Richard Preston Butler, Jr. ("Butler") is a musician who goes by the stage name "Rico Love."[3] According to the Petition, Butler is "domiciled in Georgia,"[4] but is "a California resident."[5] The Petition alleges that Butler "maintained coverage on some of his personal property,

---

[1] Rec. Doc. 5.

[2] Rec. Doc. 5-1 at p. 4.

[3] Rec. Doc. 1-1 at ¶ 2.

[4] *Id.*

[5] *Id.* at ¶ 5.

namely jewelry" with Plaintiff State Farm Fire and Casualty Company ("State Farm"),[6] "an admitted foreign insurer, licensed in Louisiana."[7]

In their Petition, Plaintiffs assert that Butler "made arrangements to hire a Limousine through Diva."[8] According to the Petition, Diva is "a foreign (California) company, not registered to do business in Louisiana."[9] Plaintiffs claim that Butler had used Diva's services "numerous times previously, who in turn subcontracted out of town jobs to local providers, when services were required outside of its coverage area."[10] Further, Plaintiffs assert that Butler contracted with Diva "not only to provide limousine and driver services, but also for security services, as it knew that the Insured carried valuables on him when he did these out of town shoots."[11]

According to Plaintiffs, Diva and Defendant Bonomolo Limousines, Inc. ("Bonomolo"), a Louisiana company, "were providing those services on September 24, 2012 at approximately 8:00 p.m. in the 2300 block of Leonidas Street in New Orleans, where the Insured was on location for a music video shoot."[12] Plaintiffs allege that Butler "left his black leather Haimovi Jewelery Box in the rear section of the engaged limousine,"[13] and that "[a]t all times the vehicle was to have been locked and occupied by the driver/security personnel."[14] According to Plaintiffs, when Butler returned to the

---

[6] *Id.* at ¶ 5.

[7] *Id*. at ¶ 1.

[8] *Id.* at ¶ 5.

[9] *Id.* at ¶ 3.

[10] *Id.* at ¶ 5.

[11] *Id.* at ¶ 6.

[12] *Id.* at ¶ 7.

[13] *Id.* at ¶ 7.

[14] *Id.*

limousine at 8:15 p.m., he "discovered the limousine to be unlocked and [the driver], not inside nor in close proximity to the vehicle."[15] Upon entering the limousine, Plaintiffs assert, Butler "discovered his jewelry box missing along with the jewelry, valued at over $130,000, that had been inside the jewelry box, some of which was covered by the State Farm policy and some of which was not."[16]

### B. Procedural Background

On September 23, 2013, Plaintiffs filed suit against Diva and Bonomolo in Civil District Court for the Parish of Orleans, State of Louisiana, alleging breach of contract and negligence claims.[17] On December 13, 2013, Diva removed the case to this Court asserting diversity jurisdiction.[18] On December 23, 2013, Diva filed the pending "Motion to Dismiss for Lack of Personal Jurisdiction."[19] Plaintiffs have not filed any opposition to the pending motion.

On September 8, 2014, the Court issued an Order explaining that upon review of this matter, it had come to the Court's attention that it may not have subject matter jurisdiction over this case due to a lack of complete diversity between the parties.[20] The Court ordered that the parties brief the jurisdictional issue by September 10, 2014 at 12:00 p.m.[21] After all parties failed to file any brief, the Court extended the deadline to September 10, 2014 at 5:00 p.m.[22] Following the extension, Diva

---

[15] *Id.* at ¶ 8.

[16] *Id.*

[17] *Id.* at ¶ 9.

[18] Rec. Doc. 1.

[19] Rec. Doc. 5.

[20] Rec. Doc. 18.

[21] *Id.*

[22] Rec. Doc. 21; Rec. Doc. 22.

3

filed a memorandum.[23]

## II. Subject Matter Jurisdiction

Although none of the parties raised the issue, the Court must address subject matter jurisdiction *sua sponte* since a "party may neither consent to nor waive federal subject matter jurisdiction."[24] "[S]ubject matter delineations must be policed by the courts on their own initiative."[25] The Court must remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[26]

In its Notice of Removal, Diva asserts that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 "[s]ince there is complete diversity of citizenship between Plaintiffs and Defendants, and because the amount in controversy exceeds $75,000."[27] However, it was unclear whether complete diversity truly existed. As a corporation, Defendant Diva "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."[28] According to the Notice of Removal, Diva's principal place of business is in Studio City, California,[29] thus making Diva a California citizen. Based on the allegations of the Petition, Plaintiff Butler may also be a California citizen, which would

---

[23] Rec. Doc. 20.

[24] *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999).

[25] *Gasch v. Hartford Acc. & Idem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

[26] 28 U.S.C. § 1447(c).

[27] Rec. Doc. 1 at p. 3.

[28] 28 U.S.C. § 1332(c)(1).

[29] Rec. Doc. 1 at pp. 2–3.

defeat diversity. Specifically, the Petition states that Butler is "domiciled in Georgia,"[30] but is "a California resident."[31]

In *Coury v. Prot*, the Fifth Circuit laid out the framework for determining citizenship of natural persons in §1332 diversity cases:

> The fourteenth amendment to the Constitution provides that: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." United States Const. amend. XIV, § 1. However, "reside" has been interpreted to mean more than to be temporarily living in the state; it means to be "domiciled" there. Thus, to be a citizen of a state within the meaning of the diversity provision, a natural person must be both (1) a citizen of the United States, and (2) a domiciliary of that state.[32]

Therefore, for the purposes of diversity jurisdiction, citizenship of a natural person is determined by an individual's domicile.[33] To determine a litigant's domicile, courts consider many factors including "where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family."[34] While the court should consider where the litigant claims to be domiciled, his assertion is "entitled to little weight if it conflicts with the objective facts."[35] "In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or

---

[30] Rec. Doc. 1-1 at ¶ 2.

[31] *Id.* at ¶ 5.

[32] *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

[33] *Preston v. Tenent Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 797 (5th Cir. 2007).

[34] *Coury*, 85 F.3d at 251.

[35] *Id.*

5

live testimony concerning the facts underlying the citizenship of the parties."[36]

Although the Petition indicates that Butler is "domiciled in Georgia" and is a "California resident," it appears that Butler is currently domiciled in Florida, and was domiciled in Florida both at time of the incident and when this case was filed. According to a brief filed by Diva, in a deposition, Butler testified that he has lived in Miami, Florida for two years with his girlfriend, his son, and his mother.[37] Butler also has a Florida drivers license.[38] Further, Butler stated that bills are sent to him in Florida, although some bills go to Georgia.[39] Finally, Butler testified that he does not use a bodyguard when he makes appearances in Miami, Florida, but that a bodyguard accompanies him whenever Butler travels outside of Florida, allegedly demonstrating that he considers Florida to be his home.[40] Plaintiffs have not disputed these allegations.

Considering the evidence in the record, it appears at this juncture that Butler is citizen of Florida, and that there is complete diversity between the parties. However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the case will be remanded.[41]

---

[36] *Id.* at 249.

[37] Rec. Doc. 20-1 at pp. 2–3. Prior to living in Miami, Butler lived in Georgia. *See id.*

[38] *Id.* at p. 3.

[39] *Id.*

[40] *Id.* at p. 5.

[41] 28 U.S.C. § 1447(c).

### III. Personal Jurisdiction

**A. Parties' Arguments**

**1. Diva's Argument in Support**

Diva argues that Plaintiffs "cannot prove and did not allege facts to establish that Diva Limousines, Ltd., a nonresident of Louisiana, has or had sufficient minimum contacts with Louisiana to warrant this court exercising personal jurisdiction over it."[42] According to Diva, in the Petition, "[t]here are no allegations and no evidence that Diva maintained the type of 'continuous and systematic general business contacts' with Louisiana to establish general jurisdiction."[43] Further, Diva maintains that "[n]or are there sufficient allegations to establish specific personal jurisdiction."[44] Specifically, Diva argues:

> There is only allegation whereby plaintiffs assert contact as between Diva Limousines, Ltd and Louisiana and that is found in paragraph 5 of the petition which states: "The Insured, a California resident, had made arrangements to hire a Limousine through Diva, whose services he had utilized numerous times previously, who in turn subcontracted out of town job to local providers, when services were required outside of the coverage area."[45]

Additionally, Diva notes that "Plaintiffs further allege that Butler was in Louisiana on September 24, 2012 and that 'Diva and Bonobolo were providing those services.'"[46] Diva argues that these alleged contacts between Diva and Louisiana "are simply insufficient for purposes of this court exercising personal jurisdiction over Diva Limousines Ltd." and do not "establish the requisite minimum

---

[42] Rec. Doc. 5-1 at p. 3.

[43] *Id.* (citing *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364 (5th Cir. 2010)).

[44] *Id.*

[45] *Id.*

[46] *Id.* at p. 4.

contacts."[47]

**2. Plaintiffs' Argument**

Plaintiffs did not file a response to Diva's "Motion to Dismiss for Lack of Personal Jurisdiction."

**B. Law and Analysis**

**1. Standard on a Rule 12(b)(2) Motion to Dismiss**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move the court to dismiss a complaint for lack of personal jurisdiction.[48] In deciding a 12(b)(2) motion to dismiss, the district court may consider "the entire record" and may receive "affidavits, interrogatories, depositions, oral testimony, or any combination of recognized methods of discovery."[49] A district court has "considerable leeway" on how it resolves the motion.[50] The district court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion."[51] When a district court does not conduct an evidentiary hearing, "the party seeking to assert jurisdiction is required only to present sufficient facts to make out a *prima facie* case supporting jurisdiction."[52] The court shall accept as true that

---

[47] *Id.*

[48] Fed. R. Civ. P. 12(b)(2). The Court notes that removal does not constitute a waiver of a defendant's right to bring a 12(b)(2) motion to dismiss for lack of personal jurisdiction. *See Thompson v. Cartlidge*, 158 F.3d 583 (5th Cir. 1998).

[49] *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

[50] *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (5th Cir. 1981).

[51] *Id.*

[52] *Central Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (citing *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000)); *see also Data Disc., Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (5th Cir. 1977).

party's uncontroverted allegations, so long as the allegations are not merely conclusory, and shall "resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction."[53]

The Fifth Circuit has not explicitly addressed how district courts should consider unopposed motions to dismiss for lack of personal jurisdiction or whether a plaintiff can meet its burden of proof when it fails to file a response presenting facts supporting jurisdiction. However, in ruling on unopposed Rule 12(b)(2) motions, district courts within the Fifth Circuit have conducted the personal jurisdiction analysis by looking to the plaintiff's complaint to assess whether it sets forth sufficient facts to establish a *prima facie* case for personal jurisdiction.[54]

### 2. Personal Jurisdiction

In a diversity action, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the forum state's jurisdictional statute and the Due Process Clause of the Fourteenth Amendment.[55] Louisiana Revised Statute § 13:3201 authorizes Louisiana state courts to exercise personal jurisdiction "on any basis consistent with the constitution of this state and of the Constitution of the United States."[56] As the Fifth Circuit has instructed, because Louisiana's long-arm statute authorizes the exercise of personal jurisdiction to the extent permitted by the Fourteenth Amendment, a federal court must only determine if subjecting the defendant to suit in Louisiana

---

[53] *Id.*

[54] *See, e.g.*, *Hudleston v. RIN TIN TIN, Inc.*, No. 11-1427, 2011 WL 4502907 (W.D. La. Sept. 1, 2011) (Hayes, M.J.) *report and recommendation adopted*, No. 11-1427, 2011 WL 4501425 (W.D. La. Sept. 28, 2011) (James, J.); *Gulf S. Med. & Surgical Inst. v. Pan Am. Life Ins. Co.*, CIV. A. 91-4649, 1992 WL 202346 (E.D. La. Aug. 12, 1992) (Sear, J.).

[55] *Central Freight Lines Inc.*, 322 F.3d at 380.

[56] La. Rev. Stat. § 13:3201.

comports with the Due Process Clause.[57]

In *Central Freight Lines Inc. v. APA Transport Corp.*, the Fifth Circuit laid out the framework for analyzing whether the Constitution permits a court to exercise personal jurisdiction over a defendant. As the Fifth Circuit explained, the Due Process Clause protects an individual from being subject to a binding judgment "of a forum with which he has established no meaningful 'contacts, ties, or relations.'"[58] For a court's exercise of personal jurisdiction over a nonresident defendant to be consistent with Due Process, two factors must be satisfied. First, the defendant must have "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state.'"[59] Second, a court's exercise of personal jurisdiction cannot "offend traditional notions of fair play and substantial justice.'"[60] Due Process is satisfied when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[61] This requirement ensures that a defendant will not be subject to litigation because of "'random,' 'fortuitous,' or 'attenuated' contacts" with the forum state.[62]

"[M]inimum contacts may result in either specific or general jurisdiction."[63] As *Central*

---

[57] *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (noting that only the Due Process Clause analysis is necessary).

[58] *Central Freight Lines Inc.*, 322 F.3d at 380 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

[59] *Id.* (quoting *Mink v. AAA Development, LLC*, 190 F.3d 333, 336 (5th Cir. 1999)).

[60] *Id.* at 381 (quoting *Mink*, 190 F.3d at 336).

[61] *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[62] *Id.* (quoting *Burger King Corp. v. Rudewicz*, 471 U.S. 462, 475 (1985)).

[63] *Central Freight Lines Inc.*, 322 F.3d at 380.

*Freight Lines Inc.* instructs, "[g]eneral jurisdiction may be asserted when a defendant's contacts with the forum state are substantial and 'continuous and systematic' but unrelated to the instant cause of action."[64] In contrast, when the nonresident defendant has "purposely directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities,' the defendant's contacts are sufficient to support the exercise of specific jurisdiction over that defendant.'"[65] In some cases, "[a] single purposeful contact" may confer specific jurisdiction.[66]

The Fifth Circuit has repeatedly held that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction."[67] Rather than looking exclusively at the existence of a contract between the defendant and a resident of a forum state, the court must analyze the contract to determine whether the "defendant purposely established minimum contacts within the forum."[68] In *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, the Fifth Circuit characterized this analysis as a "'highly realistic' approach . . . recognizing that a contract is ordinarily but an intermediate step serving to tie up prior negotiations and future consequences which themselves are the real object of the business transaction.'"[69] *Electrosource* instructs that "[t]he factors of prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must be evaluated in determining whether the

---

[64] *Id.* at 381(quoting *Helicoperos Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

[65] *Id.* (quoting *Burger King Corp.*, 471 U.S. at 472).

[66] *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 379 (5th Cir. 2002).

[67] *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *see also Freudensprung v. Offshore Technical Servs.*, Inc., 379 F.3d 327, 344 (5th Cir. 2004); *Colwell Realty Inv., Inc. v. Triple T Inns of Ariz., Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986); *Stuart*, 772 F.2d at 1192–93.

[68] *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999).

[69] *Id.*

11

defendant purposefully established minimum contacts with the forum."[70] When considering prior negotiations and contemplated future consequences, a court should examine the communications that preceded the formation of the contract and assess whether the contract envisioned "continuing obligations and wide-reaching contacts" between the defendant and the forum state.[71] When analyzing the terms of the contract, courts find the "place of contracting" relevant and give "weighty consideration" to where the performance under the contract was due.[72] Moreover, if the contract contains a choice-of-law provision, that will also be a significant factor.[73]

### 3. Analysis

As discussed above, for the Court to exercise personal jurisdiction, it must first determine whether the defendant "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state.'"[74] These minimum contacts may confer either general jurisdiction or specific jurisdiction. If a defendant has minimum contacts with the forum state, then the court must evaluate whether its exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice.'"[75]

---

[70] *Id.*

[71] *Stuart*, 772 F.2d at 1194.

[72] *Command-Aire Corp. v. Ontario Mechanical Sales and Serv., Inc.*, 963 F.2d 90, 94 (5th Cir. 1992); *see also Holt Oil & Gas Corp.*, 801 F.2d at 778 (emphasizing the importance of where a majority of the performance of the contract occurs).

[73] *See Burger King Corp.*, 471 U.S. at 481–82 (observing that in evaluating personal jurisdiction, "the Court of Appeals gave insufficient weight to provisions in the various franchise documents providing that all disputes would be governed by Florida law"); *Brammer Eng'g, Inc. v. E. Wright Mountain Ltd. P'ship*, 307 F. App'x 845, 848 (5th Cir. 2009); *Holt Oil & Gas Corp.*, 801 F.2d at 778; *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1031 (5th Cir. 1983).

[74] *Central Freight Lines Inc.*, 322 F.3d at 380 (quoting *Mink*, 190 F.3d at 336).

[75] *Id.* at 381 (quoting *Mink*, 190 F.3d at 336).

### a. General Jurisdiction

A court may exercise general jurisdiction when the "defendant's contacts with the forum state are substantial and 'continuous and systematic.'"[76] That is, the defendant's contacts with the forum state must be regular and substantive.[77] To confer general jurisdiction, the nonresident defendant must have a "business presence" in the forum state; the mere conducting of business with the forum state does not qualify.[78] In their complaint, Plaintiffs did not allege any facts indicating that Diva has a business presence in Louisiana. Indeed, Plaintiffs characterize Diva as a "foreign (California) corporation, not registered to do business in Louisiana."[79] Accordingly, the Court does not have general jurisdiction over Diva.

### b. Specific Jurisdiction

A court may exercise specific jurisdiction over a nonresident defendant if the defendant "purposely directed its activity at the forum state" and if the civil action arises from or is related to that activity.[80] In this case, Plaintiffs have not filed any response to the pending motion articulating whether the minimum contacts requirement is satisfied with respect to Diva. Looking at the petition, the only possible contact Plaintiffs allege between Diva and Louisiana appears to be premised on two agreements. First, Plaintiffs assert Butler contracted with Diva for a limousine, driver, and security.[81] Second, Diva allegedly "subcontracted out of town jobs to local providers, when services were

---

[76] *Holt Oil & Gas Corp.*, 801 F.2d at 778.

[77] *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 612 (5th Cir. 2008).

[78] *Id.* at 611.

[79] Rec. Doc. 1-1 at ¶ 3.

[80] *Central Freight Lines Inc.*, 322 F.3d at 380 (quoting *Burger King Corp.*, 471 U.S. at 462).

[81] Rec. Doc. 1-1 at ¶ 6.

required outside of its coverage area,"[82] and according to Plaintiffs, Diva and Bonomolo were providing these services to Butler on September 24, 2012 in New Orleans, Louisiana.[83] The Court will analyze the two agreement in turn.

### i. Agreement Between Butler and Diva

As an exhibit to its Answer, Diva attaches what it alleges to be an agreement "signed by Pamela Glass, an agent acting on Butler's behalf."[84] This agreement includes a "Signature on File Authorization Form" as well as "Policies and Terms" sheet. Plaintiff, however, has not indicated whether this document represents the agreement between Butler and Diva.

The record does not reference any "prior negotiations" between Butler and Diva beyond Plaintiffs' allegation that Butler utilized Diva's services "numerous times previously."[85] The Petition does not indicate whether these previous arrangements occurred in Louisiana, or whether they took place in some other state. With respect to possible future consequences, there is no suggestion that the contract between Butler and Diva envisioned "continuing obligations and wide-reaching contacts" between Diva and the forum state, Louisiana.[86] In sum, there is no indication that Plaintiff had ever requested that Diva make limousine and security arrangements in Louisiana in the past, or that Butler and Diva contemplated that Diva would having continuing obligations in Louisiana.

Second, although Plaintiffs assert that Butler "made arrangements" with Diva to hire a limousine and for security services, Plaintiffs have not expressly alleged that Butler made

---

[82] *Id.* at ¶ 5.

[83] *Id.*

[84] Rec. Doc. 4 at p. 4; *see also* Rec. Doc. 4-1.

[85] *Id.* at ¶ 5.

[86] *Stuart*, 772 F.2d at 1194.

14

arrangements for a limousine to be provided specifically in Louisiana. Further, in looking at the purported agreement filed by Diva, that document appears to be a standard form and contains no reference to where services are to be provided.[87]

Third, the record does not indicate the actual dealings between Butler and Diva beyond Plaintiffs' assertion that "Diva and Bonomolo" provided Butler with a limousine and a driver/security personnel in New Orleans, Louisiana on September 24, 2012.

Finally, the purported agreement filed by Diva contains a choice-of-law provision, stating: "This Agreement and its performance shall be governed by the laws of the State of California, United States of America, without giving effect to applicable conflict of law provisions."[88] As noted above, a court should consider a choice-of-law provision in its analysis of personal jurisdiction.[89]

### ii. Agreement Between Diva and Bonomolo

As a preliminary matter, the Court notes that the Petition never specifically alleges that Diva entered into an agreement with Bonomolo. Rather, the Petition states Diva "subcontracted out of town jobs to local providers, when services were required outside of its coverage area,"[90] and that Diva and Bonomolo were providing these services to Butler on September 24, 2012 in New Orleans, Louisiana.[91] The implication is that Diva subcontracted with Bonomolo, but Plaintiffs never make this allegation clear.

---

[87] *See* Rec. Doc. 4-1.

[88] *Id.* at p. 3.

[89] *See Burger King Corp.*, 471 U.S. at 481–82 (observing that in evaluating personal jurisdiction, "the Court of Appeals gave insufficient weight to provisions in the various franchise documents providing that all disputes would be governed by Florida law"); *Brammer Eng'g, Inc.*, 307 F. App'x at 848; *Holt Oil & Gas Corp.*, 801 F.2d at 778; *Hydrokinetics, Inc.*, 700 F.2d at 1031.

[90] *Id.* at ¶ 5.

[91] *Id.* at ¶ 7.

15

With respect to "[t]he factors of prior negotiations and contemplated future consequences,"[92] the Petition does not reference any "prior negotiations" between Diva and Bonomolo. Further, there is no indication of any "future consequences." The Court simply has no information regarding whether Diva and Bonomolo had ever done business together or contemplated maintaining a business relationship.

Second, the record is completely silent on the terms of any agreement between Diva and Bonomolo. For example, the Petition does not address where the agreement called for material performance to occur, or whether the parties agreed to any choice-of-law provision.

Finally, the record does not indicate the actual dealings between Diva and Bonomolo beyond Plaintiffs' assertion that Diva and Bonomolo provided Butler with a limousine and a driver/security personnel in New Orleans on September 24, 2012.

Looking at the allegations as a whole, Plaintiffs fail to articulate sufficient facts to make a *prima facie* case that Diva has the requisite minium contacts with Louisiana for the Court to exercise personal jurisdiction over Diva. Rather, Plaintiffs' Petition merely seems to imply that Diva may have arranged with a Louisiana company for Butler to be provided a limousine and security in Louisiana. This implication of an attenuated relationship between Diva and the state of Louisiana, however, does not make out a *prima facie* case that "the defendant purposely established minimum contacts within the forum."[93] Because Plaintiffs have not established that Diva has minimum contacts with Louisiana, the Court may conclude that it does not have personal jurisdiction over Diva, and it need not evaluate whether asserting jurisdiction would "offend traditional notions of fair play and

---

[92] *Electrosource, Inc.*, 176 F.3d at 872.

[93] *Electrosource, Inc.*, 176 F.3d at 872.

substantial justice."[94]

### IV. Conclusion

As discussed above, for the Court to exercise personal jurisdiction, the nonresident defendant must have established "minimum contacts" with the forum state and the Court's exercise of personal jurisdiction cannot "offend traditional notions of fair play and substantial justice." In this case, Plaintiffs have not presented sufficient facts to make out a *prima facie* case supporting that Diva has the requisite minimum contacts. Accordingly,

**IT IS HEREBY ORDERED** that Diva's "Motion to Dismiss for Lack of Personal Jurisdiction" is **GRANTED** and all claims against Diva are dismissed without prejudice.

**NEW ORLEANS, LOUISIANA**, this 10th day of September, 2014.

                                        **NANNETTE JOLIVETTE BROWN**
                                        **UNITED STATES DISTRICT JUDGE**

---

[94] *Central Freight Lines Inc.*, 322 F.3d at 381 (quoting *Mink*, 190 F.3d at 336).